DISTRICT COURT.                    JANUARY 29, 1864.
                    ADMIRALTY.

## THE NEW YORK AND BALTIMORE TRANSPORTATION LINE, OWNERS OF THE FRANKLIN, *v.* THE FANNY McHENRY AND THE AMERICA.

It is a rule of river navigation, that a heavily laden steam-going vessel has, in the absence of other controlling circumstances, the right to the river channel, and deviation therefrom should be made by vessels of lighter draught.

## STATEMENT OF CASE.

THIS was a cause of COLLISION occurring in the Delaware River between what are known as the coal wharves and the Point house, a few miles below Philadelphia. Both vessels were greatly injured. The ship Fanny McHenry, under tow of the steam tug America, was coming up the river. She was a large sea-going vessel, heavily laden, with more than double the draught of water of the propeller and the canal boat attached to her. Both were in the ship channel of the river, which the Fanny McHenry was compelled to keep, having no sufficient depth of water on either side to enable her to tack with safety. It was otherwise with the propeller, owing to her lighter draught. She had; besides, the movement of the tide in her favor. She kept, however, in the deep channel until within 250 yards of the Fanny McHenry, when, finding collision imminent, the person in charge of her cried out, "Hard a port," which order the Fanny McHenry attempted to obey, and in doing so the vessels came in contact.

### CADWALADER, J.

The only difficulty which might have been encountered in this case disappears when the evidence is applied to the diagram appended to the assessor's report. From this it appears that, however the course of the America, with the Fanny McHenry in tow, may, after the Franklin was seen, have tended towards

the right, this course merely placed the McHenry in the proper channel for navigation of a sea-going vessel of her draught. The motives of her navigator stated in the pleadings or evidence are therefore unimportant. She did not, in any nautical sense, alter her course until signaled from the Franklin to do so, and then did nothing but simply obey the signal. Of this the libellants cannot complain. The question which thus arises is whether the McHenry was not justifiable in keeping her course in the ship channel; in other words, whether the Franklin was not bound to give way to her. In general, a tug having only a canal barge in tow may, as compared with a tug having a heavy sea-going vessel in tow, be considered as an unincumbered vessel bound to give way to the other. If special considerations are entertained, the state of the tide adds force to the applicability of the general reason. Independently of the general reason, the Franklin, being of such draught as to be navigable without any reference to the shoals which necessarily restrained the course of the other vessel and having ample time and space to have passed her on either side, could not justifiably have expected her to alter her course, and was bound for this additional reason to give way. Her navigator, instead of doing so, assumed that the case was the ordinary one of two approaching steamers in an open channel, each bound to port her helm. In the assessor's opinion that he was mistaken I fully concur. Whether under the rule of decision established by the Supreme Court the answer can serve the purpose for which it was framed of a cross bill, is perhaps questionable. From the course of the argument I infer that the technical objection upon this point is waived on the part of the libellants. This being so, the libel will not only be dismissed with costs, but a decree against the libellants that the respondents recover their damages will also be entered.

Whether as to the latter part of the decree they should recover costs or not I do not decide.

On appeal to the Circuit Court the judgment of the District Judge was affirmed with costs.